**Febe B. CUTSHAW and Erasmus William Riley, Jr., Appellants,**

v.

**Lucille Jesmier RILEY, Appellee.**

**No. 46282.**

Supreme Court of Oklahoma.

June 26, 1973.

Burl A. Peveto, Jr., Payne & Peveto, Atoka, for appellants.

Lyn E. Ables, Tishomingo, for appellee.

BERRY, Justice:

The question to resolve in this appeal is the correctness of the trial court's modification order placing custody in a stepmother of a minor child over application for custody to be returned to the natural mother by both natural parents [though separated and divorced].

The parties will be referred to as follows: intervenor as mother; petitioner as father, and respondent as stepmother. Mother divorced father in the Family Court of the State of Hawaii in 1966. Under the decree mother was awarded custody of the only child of the marriage, Mary Joyce Riley, born August 1, 1957. Father left Hawaii and eventually returned to his original locale in Mill Creek, Johnston County, Oklahoma. Subsequently he married stepmother. Mother remained in Honolulu, Hawaii and eventually married Robert P. Cutshaw.

Mary Joyce stayed with mother and Mr. Cutshaw until February 7, 1972, when she came to visit father in Mill Creek without mother's permission or consent. After Mary Joyce arrived with father, her mother acquiesced and sent her money. Subsequently father and stepmother developed domestic problems. Father left their home and filed divorce proceedings against stepmother.

Mary Joyce remained with and in the custody of stepmother. Father filed this action asking to have Mary Joyce returned to mother. This appeal is lodged from the trial court's order denying petition for writ of habeas corpus and modifying Hawaiian divorce decree by granting custody of Mary Joyce to stepmother.

Mother urges under two propositions that the trial court erred in modifying a foreign divorce decree changing the custo-

dy of a minor child to a stranger absent a showing that it was in the best interest of the child to do so, and that a natural parent is to be given preference over a non-parent in seeking custody.

Stepmother answers that the district court had jurisdiction to inquire into the best interests of Mary Joyce and change custody if her welfare was in jeopardy or some other unusual circumstance exists, and further that there was sufficient evidence to show unfitness of intervenor and a change of conditions affecting the welfare of the child since the Hawaiian divorce decree.

In our consideration of this appeal there will be no attempt to treat separately the contentions or arguments of either party, nor will we resolve issues which are unnecessary to reach a conclusion.

In Clampitt v. Johnson, Okl., 359 P.2d 588, 594, we said in part:

"The general rule appears to be that if a court of a sister state enters a valid and binding order * * * concerning the custody of minor children, such order will be recognized by the courts of this state as a matter of comity, and the courts of this state will not assume or exercise jurisdiction to relitigate the question of custody unless the child or children are lawfully and legally within this state. * * *

"However, an exception to the general rule should be allowed by the courts of this State where the welfare of the child is in jeopardy or some other unusual circumstance exists. * * *"

As the record and evidence stands there appears a valid order from the State of Hawaii placing legal custody in the mother. This is neither refuted nor contested. Mary Joyce left her home with her mother without the consent or approval and against the will of her mother and came to the residence of her father, who was then married to her stepmother in Johnston County, Oklahoma. Mother acquiesced in this arrangement eventually and sent money to and corresponded with Mary Joyce.

Mary Joyce enrolled in school. Not until father left stepmother and filed for divorce did a problem arise. Mary Joyce chose to remain with stepmother. After which father filed this action seeking writ of habeas corpus.

■ In our review it is apparent Mary Joyce remained in Oklahoma with her father and stepmother and entered school with the mother's acquiescence. We conclude this is not tantamount to a change in the custody order of the foreign court. This condition remained until a divorce proceeding arose between the father and stepmother. Mary Joyce, involved in her school and social activities, chose to remain with her stepmother. We find that Mary Joyce is in the legal custody of her mother and that this matter being a habeas corpus proceeding Mary Joyce is not legally in Oklahoma.

Further we find that unless the welfare of Mary Joyce is in jeopardy or some other circumstance exists the District Court of Johnston County erred in modifying the custody order from the State of Hawaii. We now turn to the evidence to support the trial court's modification order. We note there was no pleading filed in the court by the stepmother, who did not take the stand in the trial court. The only pertinent evidence which may lend support to the trial court's order was offered by Mary Joyce, who testified at great length.

■ Her testimony reveals her to be a highly intelligent young lady with a strong mind and will of her own, who does not want to return to her mother but wants to stay and live with her stepmother. Her mother had been strict with her and the mother displayed her temper towards Mr. Cutshaw by throwing glass. The mother and stepfather did use alcohol and Mary Joyce had been discouraged at least once from going to church. The record does show that Mary Joyce was not physically abused but was adequately provided for. A letter from Mary Joyce to her mother shows warmth, love and appreciation towards each other. This letter was written

prior to her father's separation from stepmother. The testimony of several of stepmother's witnesses from Oklahoma show Mary Joyce to be well liked, well behaved and popular and that they desired for her to remain with stepmother. However, there is no testimony to show whether the stepmother wants to take on the responsibility of Mary Joyce's welfare.

Father, mother and Mr. Cutshaw testified for the issuance of the writ. Their testimony shows all the financial support for Mary Joyce came from mother and father. Mother and Mr. Cutshaw are financially responsible. Mary Joyce was always well taken care of and provided for by mother, but that their personalities were similar in that each wanted her own way. Mr. Cutshaw and Mary Joyce had close rapport prior to Mr. Cutshaw's efforts to have Mary Joyce returned to her mother. Mary Joyce reacted as shown by her testimony that he let her mother dominate him which caused her [Mary Joyce] to lose respect for him. Mr. Cutshaw expressed warm feeling toward Mary Joyce and desired her return. He expressed that he would educate her in a private school. As indicated earlier the stepmother did not plead or testify. There is nothing in the record to show who would look after or be responsible for Mary Joyce except those seeking the writ. Of the many witnesses who testified as to the desirability of Mary Joyce remaining in Mill Creek, commendable as it appears, none have thrown any light directly on the issues which are determinative of this review. The evidence shows that Mary Joyce is a fine, outstanding young lady, who desires to remain in Mill Creek where she is now happy. We are cognizant of the consideration of Mary Joyce's wish in regard to custody. However, in reviewing and weighing the record before us we find the trial court's judgment against the clear weight of the evidence in modifying the custody order set out in the final decree of divorce by the Family Court of the State of Hawaii.

Modification order reversed and cause remanded with instructions to issue writ of habeas corpus granting custody to intervenor as prayed for.

WILLIAMS, V. C. J., and IRWIN, LAVENDER, BARNES, SIMMS and DOOLIN, JJ., concur.

DAVISON, C. J., and HODGES, J., dissent.